at all. Mr. Warlow. Good morning, Your Honors. Counsel. Your Honors, I represent Mr. Ronald J. Hamilton. In this matter, I would like to reserve five minutes for rebuttal. Judges, Mr. Hamilton goes by Joe. If I call him Joe today, that's who I am referring to. Your Honors, we can talk about the facts. You have ten minutes and you're reserving five? Ten minutes, reserving five. Judges, we can talk about the facts today as much as you all would like to. If you have any questions, I would like to encourage you to present those to me. I would like to get to qualified immunity. Your Honors, the trial judge dismissed Mr. Hamilton's 8th Amendment 42 U.S.C. 1983 claim based in large part on this court's decision in Cody v. City of St. Louis. Our position is that Cody does not bear upon Mr. Hamilton's claim insofar as the specific circumstances of his case. Cody is a municipal liability case and a Rule 23 appeal. Mr. Hamilton's case is an individual claim against individual defendants and his claim is not based exclusively upon exposure to excessive heat. Instead, his claim also contemplates the specific circumstances of his health. The Supreme Court of the United States in Wilson v. Sider has explained that when a conditions of confinement claim amounts to or when it is combined with the specific circumstances of the plaintiff's health and there is a mutually enforcing effect which amounts to the deprivation of a single human need. This is Wilson? Wilson v. Sider. Yes, Judge. Under those circumstances, the conditions of confinement and the plaintiff's health circumstances are appropriately considered together. I think Wilson, in fact, mentions that excessive temperatures in a cell is an appropriate part of such a claim. Is that right? That's true, Judge. Those words, those terms. Yes, Judge. And here we are in a fact pattern where an inmate, after getting into a fight with a jailer, was placed in solitary confinement where there is no temperature control in the middle of the summer in Malvern, Arkansas for six weeks. Go ahead, Judge. Let's jump to deliberate indifference. Yes, Judge. Which you agree is the standard. Yes, Judge. As I understand it, he got medical attention frequently. He was prescribed an ointment and then another ointment and then some sort of other oral medication, I believe. There were attempts to open doors so that the cooling area could and I think maybe portable air conditioners provided. So I'm having a hard time seeing how that amounts to deliberate indifference. The cases talk about mitigation measures, remedial measures efforts by the State. I think those matter and certainly they're within this Court's purview in the consideration of this context. I think there is nonetheless a genuine dispute of material fact. The plaintiff's position or the appellant's position in this case is that it's difficult to affirm a case alleging inadequate conditions of confinement based in part on excessive heat exposure when the defendants who have control over what the temperature inside the cells were, excuse me, when the defendants have control over the evidence of what the actual temperature inside the cells were. I thought they didn't have the evidence. I thought they didn't have the evidence. Right, Judge. They've got the temperature readings inside the cell up until Mr. Hamilton's confinement in solitary. Then they are lost without much of an explanation. However, Mr. Hamilton did testify at his deposition that the jailers were coming into the solitary confinement area and using tools to take the temperature inside the cells but not telling him what that temperature was. Well, let me, if I may, if that's all right, this is a related question, I think. What's your evidence that there was any medical advice that indicated that he needed to be moved? Good question. Part of the case here on the part of the defendant is that medical advice was sought and no medical person said he needed to be moved. Is that correct? That is. Well, you know, Judge, I don't know that the record is the clearest one in the world, and obviously that's not all on, that's our responsibility. I'm here, I was appointed in the middle of this case, and I'm here presenting the issues to you as best as I can. As far as medical advice, that was ignored. There is a hearsay issue related to a statement by one of the defendants, Mr. Bryant Dallas. He says that, Mr. Bryant Dallas says, mind your own business. That's the words that Mr. Hamilton says he heard. Now, the context. Connect to nurses. But Mr. Hamilton is also in the room. That's what he says according to his deposition. So I think the No, but where is the positive medical evidence there? I understand the force of that evidence on other issues, but not on this one. I believe the context is Mr. Hamilton having previously been provided a sheet, a medical sheet which explains certain restrictions that a person undergoing dialysis treatment is supposed to observe. On that sheet are avoid extreme temperatures, and Mr. Hamilton was also supposed to be observing a fluid intake restriction. I don't believe any of those circumstances are disputed. Your Honors, I'm into my rebuttal time now. I think I should turn things over to the State and give me a chance to come back up here. Thank you. Mr. Middlebrooks.  Good morning, Judges, and may it please the Court. As this Court held in Cody, Mr. Hamilton is required, he's failed to plead a constitutional violation based on clearly established law. My clients in this case have proven that they were not deliberately indifferent to any of his needs. Well, on this issue, why aren't the Fifth and Eleventh Circuit a robust consensus? Regarding hot, extreme temperatures impact on inmates. Your Honor, I think the problem with those cases is No, I didn't ask you. Your Honor, you want to argue clearly established, and you want to emphasize the robust language of the Supreme Court. Yes, Your Honor. So I'm jumping ahead. Yes, sir. Why aren't the Fifth and Eleventh Circuit a robust consensus on this particular conditions issue? It's because they treat it so differently, Judge, that I think any officer could But that's not a response to the clearly established argument. I think it is, Judge. Robust consensus tells the State that they should be handling this differently. Your Honor, if it was a robust consensus, they would be saying to handle it the same. If you apply it at too high a level of generality, and you say, you know, the Ninth Circuit and the Fifth Circuit This isn't generality at all. Well, I think it is, Judge. Until you get to whether the Fifth and Eleventh Circuit are a robust consensus in North Dakota. Well, and Judge, I think that, you know, all of the circuits agree that excessive force can constitute a claim. I think that all the circuits agree that temperatures can constitute a claim. But when the only two that have cases on this specific subject treat it so differently that it is no longer clearly established. You know, qualified immunity is a fact-intensive analysis. And in this case, you could apply these facts to the Eleventh Circuit or the Fifth Circuit and get different results. So in that sense, it's not clearly established. And as this Court was mentioning earlier, there's no evidence that Mr. Hamilton was ever denied any medical care. In fact, he seemed to have gotten better medical care while he was in isolation. And as this Court also mentioned, there really was no showing of deliberate indifference. They responded reasonably to his request. Every time he issued a grievance or wrote a grievance or a sick call, he got treatment the same day, the next day. And they would consult his doctors and nurses frequently. Going to the hearsay problem, the argument that I was making was not that Mr. Dallas's statement was indemnifiable hearsay because that would come in under admission of a party opponent. It's that what the nurses were advising Mr. Dallas would be an indemnifiable hearsay. Mr. Hamilton could have deposed- Why would that be hearsay? Who testified as to what they were advising him? Did he testify to that? Mr. Hamilton said it in his deposition. But there's- I'm sorry. Tell me again what he said exactly. He said that the dialysis nurses told my client, Mr. Dallas, that Mr. Hamilton needed to be moved for his health. But Hamilton is the only person who has said that. And, actually, the record contradicts what he's saying. In Docket Entry 78, Exhibit 2, there's an email from the dialysis nurses to Defendant Dallas saying, you know, Hamilton advised us he shouldn't be in isolation. I'm just bringing it to your attention because he brought it to ours. Well, leaving aside for the moment the hearsay, unless hearsay difficulty, I have a little problem with that. But suppose, I mean, there's evidence here that doctors, that is, MDs, were saying it's not ideal, maybe, but he doesn't need to be moved. It seems to me that you have a question here about whether, assuming that the nurses were saying something different, what, you know, is it not reasonable for the warden to pay attention to the doctors? I think it is reasonable. Assuming that it even comes in, in other words. I'm sorry, could you- Assuming even the alleged statement by the nurses is in the record properly. Yes, sir. And I think it is reasonable for them, my clients who are not trained medical professionals, to rely on trained medical professionals. And, again, you know, Mr. Hamilton had a restriction before he started dialysis to avoid extremely hot or cold temperatures. They removed that when he started dialysis and specifically noted he's no longer susceptible to heat-related injury. Whether or not that was appropriate for medical to do, that's a different issue. Mr. Hamilton has not sued medical or, you know, presented any medical evidence about, you know, how the heat would have affected him. So, in this case, I think it's fairly undisputed that my three specific clients were responding quickly and reasonably to his, you know, grievances and the information they were given when they were given it. But if I have no other questions, I'll- Your Honors, I think the Court has a difficult situation or a difficult issue in this context. It's this idea of jailers relying upon the advice of a contracted medical care provider. At least that's what their positions is. And when that runs into an issue which may, to other people, feel kind of obvious, there are cases which talk about how medical care might be denied or otherwise not provided for non-medical reasons, such as maybe the inmate is a difficult person. Here's what I see when I look at the record in this case, Judge. When you get to the third grievance, the one filed on August 11, 2020, in that grievance, Mr. Hamilton writes out, I am a dialysis patient, I am subject to a fluid intake restriction, and I am sweating excessively. Subsequently, at his deposition, he explains that throughout that period he was cramping, that he had rashes all over his body, and that he was only able to keep this pain at bay by constantly walking, walking in circles around his cell, essentially. Now, when it comes to nerve damage and whether or not there was a medical necessity to... He was placed in a place where he could self-hydrate, right? Well, Judge, you put a person subject to a medically imposed fluid intake restriction in a place where he's going to sweat excessively, and he's got to sink. Yeah, you're right. But I would compare that to, what if it was a situation where, yeah, you've got access to water, but the water being put out is contaminated? You know, you can drink the water, but it's going to bring on other issues. That's a different... So we have someone whose kidneys need fluid, and he has an intake. He has too much fluid problem. Yes, he has a risk. He faces a risk by drinking water, by drinking more than what... But if he was placed where he had no water, the kidney claim would be much... A different flavor. The deliberate indifference would be much easier to identify. And when you've got a situation in the middle, and they're not providing 24-7 monitoring. Right, but I think either way, from Mr. Hamilton's perspective, he's got this catch-22. I understand his perspective, for sure. All I meant to say, Judge, is that by grievance number three, August 11, 2020, he has conveyed that perspective through the grievance process. And, of course, they don't let him out. He remains in there, and I think you also need to... Not for very long, but yes, for a month, I guess. Correct, Judge. And then there's this one sort of fact issue overlaying this whole period of confinement, which is that ADC's policies contemplate that there will be a medical assessment before someone is placed into a disciplinary housing change. That's not going to get you a 1983 case. Okay, okay, Judge. All I mean to say is I think it's important that... That's where we started. I thought when I read carefully the Fifth Circuit cases, Yates, I guess, is maybe the grandfather, and the Yates test is extremely dangerous temperatures without adequate remedial measures. That's the standard you think district courts fail to apply. I think on the facts, same result. I don't think the evidence viewed in the light of your client's favor gets you there. I understand your perspective, Judge. I encourage you to just consider this fact. How can they meet? How can they show there's no genuine dispute that they did not do that when they can't tell you what the temperature was inside the cell? They have all the means to control that. That information was within their control. They were monitoring it all the way up until... Not the individual defendants. They had knowledge. They didn't have... They weren't the engineers. I appreciate that, Judge. For purposes of obviousness, and I see that I'm out of time, Your Honors, I would just say that... I'm sorry, go ahead. I just wanted to emphasize that by the time we get to that August 11th grievance, I'm not sure what other information there is to... I feel like Mr. Hamilton has put people on notice in the ways that he can. That's what I'm trying to convey to the Court. Your Honor was asking a question. There must be publicly available sources that will tell you what the outside temperature were, what the temperatures were at this time. Isn't that correct? That's correct, Judge. And there was testimony from Mr. Hamilton that it was just as hot inside as it was outside. That's correct, Judge. So where is the publicly available temperature? Where are those figures? They're in the record, Judge. What Mr. Hamilton did is went and accessed some National Weather Service reports. He appended those to his complaint and service and various briefs that he filed. And I believe in our reply brief, this issue was sort of raised by the Eppley's. We pointed out that it's within this Court's power. It's within the Court's power to take judicial notice of things like outside temperatures in a specific area. Okay. Thank you. Yes, Judge. If there's nothing further, we'd just like a reversal, Judge. Thank you, Counsel. The case has been well briefed and arguments have been helpful. And we'll take it under advisement. Does that complete the motion?